UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

HARRY RUSSELL PENNINGTON                                              PLAINTIFF

V.                         NO. 4:17CV00279 BSM-JTR

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration                                         DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I. Introduction:**

Plaintiff, Harry Russell Pennington, applied for supplemental security income benefits on September 21, 2013, alleging a disability onset date of September 6, 2013 (Tr. at 34). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 46). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the

Commissioner. Pennington has requested judicial review.

For the reasons stated below, the Commissioner's decision should be affirmed.

## II. The Commissioner's Decision:

The ALJ found that Pennington had not engaged in substantial gainful activity since the application date of September 21, 2013. (Tr. at 36). At Step Two, the ALJ found that Pennington has the following severe impairments: post-history rib fracture, skull fracture (orbital fracture), and history of heel spur. *Id.*

After finding that Pennington's impairment did not meet or equal a listed impairment (Tr. at 36), the ALJ determined that Pennington had the residual functional capacity ("RFC") to perform the full range of light work, except that he would be limited to frequent stooping, crouching, bending, kneeling, crawling, and balancing. (Tr. at 37). Nonexertionally, he could perform work which is simple, routine, and repetitive, with supervision that is simple, direct, and concrete. *Id.*

The ALJ found that Pennington was unable to perform past relevant work. (Tr. at 44). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Pennington's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform, specifically janitorial cleaner and cafeteria attendant. (Tr. at 45). Consequently, the ALJ found that Pennington was not disabled. *Id.*

## III. <u>Discussion:</u>

    A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B. Pennington's Arguments on Appeal

Pennington contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that: (1) he should have been ruled disabled per Medical-Vocational Rule 201.10; (2) the ALJ failed to fully develop the record; (3) the response to the hypothetical by the VE was insufficient; and (4) the credibility analysis was incomplete. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

In July 2013, Pennington fell 20 feet from a boom truck and suffered a skull fracture, facial fracture, rib fracture, and respiratory failure. (Tr. at 348). He spent almost two months in the hospital. *Id*. By August 12, 2013, his lung capacity and renal function had improved. (Tr. at 541). By August 29, 2013, his doctor said he had improved enough to start physical therapy and would be a great candidate for rehabilitation. (Tr. at 611). Improvement in strength and diminished pain supports an ALJ's finding that a claimant is not disabled. *See Lochner v. Sullivan*, 968, F.2d 725, 728 (8th Cir. 1992). On September 3, 2013, Pennington reported he felt good and looked forward to going home. (Tr. at 624). On September 6, 2013, he passed lower extremity functional tests and was discharged home. (Tr. at 642). The ALJ's comment that Pennington's condition improved after his fall was well-founded. (Tr. at 44).

On September 10, 2013, Pennington complained of upper back pain, but he had normal range of motion with no tenderness on musculoskeletal examination. (Tr. at 955). His mood and affect were normal. *Id*.

State-agency psychiatric consultant Mike Parker, Ph.D., saw Pennington on April 18, 2014. (Tr. at 962-968). He found Pennington to be friendly, pleasant, and responsive. *Id*. His affect was bright and appropriate. *Id*. Thought process was clear, concise, and goal-directed. *Id*. Pennington appeared diligent and persistent in initiating and completing various daily tasks. *Id*. Dr. Parker gave no mental diagnosis. *Id*. The ALJ gave great weight to the opinion of Dr. Parker, finding it consistent with a record containing no evidence of mental health treatment or medication management.[1] (Tr. at 43).

Dr. John Harris, M.D., perform a consultative physical evaluation on April 29, 3014, at the state's request. (Tr. at 969-973). Pennington reported that he was independent in his daily activities. *Id*. He had normal range of motion in all extremities. *Id*. Pennington's gait was awkward, but he walked without an assistive

---

[1] Pennington submitted mental health treatment records from April and June 2016 which showed symptoms of depression and anxiety, but the effective date was after the date of the hearing decision. (Tr. at 6-27). The Commissioner correctly points out that these records are not indicative of an impairment during the relevant time-period, and thus, did not affect the ALJ's decision. (Def. Brief at 8-9); *see Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997). Moreover, the RFC assigned by the ALJ did account for moderate mental impairment.

device and could rise from a sitting position without assistance. *Id*. He could not walk on heels and toes, but he could bend and squat without difficulty. *Id*. He had 5/5 grip strength with adequate fine motor movements. *Id*. Normal examination findings are not indicative of disabling pain. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). The ALJ gave great weight to Dr. Harris's opinion, and the light RFC reflected the results of his clinical testing.

A May 27, 2014 x-ray showed a heel spur with metallic radiodensity at the base of the foot. (Tr. at 974). A fifteen-month gap in treatment preceded the next medical appointment on July 15, 2015. (Tr. at 993). Pennington had low back muscle spasms, but was not on current medications. (Tr. at 996). His doctor prescribed Flexeril and by August 25, 2015, Pennington reported that Flexeril helped with the pain. (Tr. at 1000). On that same date, his doctor urged weight loss and regular exercise. (Tr. at 1004). A physician's recommendation to exercise suggests that Plaintiff had an increased functional capacity. *See Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009).

On September 15, 2015, Pennington reported again that Flexeril was helping with leg cramping, and a musculoskeletal exam showed normal range of motion. (Tr. at 1008). Flexeril continued to work for Pennington, and an x-ray of the lumbar spine was unremarkable. (Tr. at 1028-1031). Impairments that are controllable or

amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000).

In January and February 2016, Pennington undertook physical therapy. (Tr. at 1051-1065). A note reflected that back pain was improving with treatment and physical therapy by February 2, 2016. (Tr. at 1054). His core strength and coordination was also improving. (Tr. at 1065).

Pennington argues that he should have been found disabled based on Medical-Vocational Rule 201.10, a rule referring to sedentary work. The Medical-Vocational Guidelines are a set of rules that render a finding of disabled or not disabled based on a claimant's specific vocational profile. 20 CFR Part 404, Subpart P, Appendix 2; SSR 83-11. Pennington's contention is that he should have an RFC for sedentary, rather that light, work. But the mild objective testing, normal musculoskeletal exams, response to medication, and improvement with physical therapy do not suggest he would be limited to only sedentary work. The ALJ gave proper weight to the medical evidence in formulating the RFC, which fully incorporated all of Pennington's impairments. Rule 201.10 simply does not reflect the proper RFC. For that reason, this argument by Pennington fails.

He next asserts that the ALJ did not fully develop the record. An ALJ does have a basic duty to develop a reasonably complete record. *Clark v. Shalala*, 28 F.3d

828, 830-831 (8th Cir. 1994). However, it is well-settled that a Plaintiff has the burden of proving his disability; the ALJ does not have to play counsel for the Plaintiff. *Id*. The ALJ is required to recontact a treating or consulting physician only if the medical records presented do not provide sufficient evidence to make a decision on disability. *Martise v. Astrue*, 641 F.3d 909, 926-7 (8th Cir. 2011). The medical records here showed mild limitation and improvement with treatment, and the agency consultative examiners' opinions were consistent with the record. The ALJ had no reason to think further examination was required. He based his findings on a fully developed record.

Pennington urges that the ALJ should have accepted the hypothetical his attorney posed to the VE as most reflective of his limitations, to the exclusion of the ALJ's own hypotheticals. However, Pennington's attorney suggested that he would be absent from work at least once a week. (Tr. at 94). No medical evidence supports this limitation, and no doctor placed such a restriction on Pennington. A lack of physician-imposed restrictions may serve as a reason to discredit a claimant's credibility. *Hensley v. Barnhart*, 352 F.3d 353, 357 (8th Cir. 2003). The hypothetical asked by the ALJ more fairly encompassed Pennington's actual limitations, and the VE's response thereto constituted substantial evidence. *See Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)(the Commissioner may meet his burden at Step Five

by eliciting testimony by a VE in response to "a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.")

Finally, Pennington argues that the ALJ's credibility analysis was inadequate.[2] Before coming to a conclusion on a claimant's credibility, the ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including prior work record, as well as observations by third parties and treating and examining physicians regarding: 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984).

An ALJ "has a duty to assess the credibility of the claimant and other witnesses." *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). A reviewing court "will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

---

[2] Social Security Ruling 16-3p, 2016 SSR LEXIS 4, removed the word "credibility" from the analysis of a claimant's subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. It became effective on March 28, 2016, but the underlying analysis still incorporates the same factors discussed in *Polaski* and requires the ALJ to make a determination based on all evidence in the record. *Martsolf v. Colvin*, No. 6: 16-cv-00348-NKL, 2017 U.S. Dist. LEXIS 2748 (W.D. Mo. Jan. 9, 2017). The Court notes that the hearing decision in this case pre-dated the effective date of SSR 16-3p, so the Court assumes the standard credibility analysis here.

Here, the ALJ considered Pennington's daily activities to reach a credibility determination. Pennington admitted he walks hills every day and walks to the store. (Tr. at 66-69). At the hearing, Pennington said he still chopped firewood for money. (Tr. at 71). He spends time fixing equipment. (Tr. at 89). Such daily activities undermine his claims of disability. *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). The ALJ also noted the effectiveness of pain medications, in keeping with the *Polaski* framework. And he fully considered the opinion evidence of both the consultative examiners and the medical experts who reviewed the record. (Tr. at 105-107). The ALJ's credibility analysis was proper and complete.

V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Pennington was not disabled. The ALJ properly evaluated the Medical-Vocational Guidelines, and he made his findings based on a fully developed record. The VE testimony was based on a properly phrased hypothetical and the credibility analysis was complete.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be AFFIRMED and that the case be DISMISSED, with prejudice.

DATED this 28th day of February, 2018.

_____
UNITED STATES MAGISTRATE JUDGE